## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BILLY GENE NORRIS,

        *Plaintiff,*

v.

CHIEF JADIE R. SETTLES;
OFFICER A. HATHORN; OFFICER
CHRISTOPHER REYNA; OFFICER
JASON ORME; DETECTIVE C.
HARKINS; CITY OF ROMULUS, a
political subdivision of the State of
Michigan,

        *Defendants.*

Case No. 19-cv-10782

Hon. Terrence G. Berg

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, Billy Norris, by and through his attorneys, EXCOLO LAW, PLLC, and files this Motion for Summary Judgment against Defendant Settles, Defendant Hathorn, Defendant Reyna, Defendant Harkins, and Defendant City of Romulus, for their actions that violated Plaintiff Norris' clearly established constitutional rights.

For the reasons stated in the attached brief, Plaintiff Norris respectfully request this Court Grant Plaintiff's Motion for Summary Judgment on the claims discussed herein.

Respectfully Submitted,

EXCOLO LAW, PLLC

*/s/ Solomon M. Radner*

Solomon M. Radner
Attorney for Plaintiff
26700 Lahser Rd., Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com

Dated: May 7, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BILLY GENE NORRIS,

       *Plaintiff,*

v.

CHIEF JADIE R. SETTLES; OFFICER A. HATHORN; OFFICER CHRISTOPHER REYNA; OFFICER JASON ORME; DETECTIVE C. HARKINS; CITY OF ROMULUS, a political subdivision of the State of Michigan,

       *Defendants.*

Case No. 19-cv-10782

Hon. Terrence G. Berg

Mag. Judge Stephanie Dawkins Davis

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ..................................................................iii

STATEMENT OF ISSUES PRESENTED.................................................v

CONTROLLING/APPROPRIATE AUTHORITY..................................vi

STATEMENT OF FACTS ......................................................................1

LEGAL STANDARD..............................................................................1

ARGUMENT ..........................................................................................3

   I.   DEFENDANTS VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED
CONSTITUTIONAL RIGHTS ...............................................................3

     1.   Fourth Amendment ....................................................................3

        A.   Unlawful Arrest...............................................................4

        B.   Unlawful Search..............................................................8

        C.   Unlawful Seizure...........................................................10

        D.   Malicious Prosecution....................................................12

        E.   Failure to Intervene.......................................................14

     2.   First Amendment.....................................................................15

        A.   Retaliatory Arrest..........................................................15

     3.   Qualified Immunity.................................................................17

     4.   Supervisory Liability...............................................................21

     5.   Municipal Liability.................................................................22

        A.   Policy.............................................................................22

        B.   Supervise and Train ......................................................24

  II.   DEFENDANT SETTLES' FAILURE TO SIT FOR A DEPOSITION .......25

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)......................................3

*Arizona v. Gant*, 556 U.S. 332, 338 (2009) .................................................................8

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ................................................. 19, 21

*Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)..............................17

*Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997)......................................20

*Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015) .....................................19

*Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) ............................................23

*Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ......................................................8

*Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998) ..................................................20

*Burgess v. Fischer,* 735 F.3d 462, 475 (6th Cir. 2013) ..........................................15

*Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013) ..........................................22

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) ..........................18

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).........................................3

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989)........................................ vi, 24

*Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009)................................................17

*Farm Labor Organizing Committee v. Ohio State Hwy. Patrol*, 308 F.3d 523, 543
   (6th Cir.2002) ...................................................................................... 10, 11

*Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) ..................................18

*Greene v. Barber*, 310 F.3d 889, 897–98 (6th Cir. 2002) ................................ vi, 21

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ....................................................... 18, 19

*Illinois v. Wardlow,* 528 U.S. 119, 123 (2000).........................................................6

*Jackson v. City of Cleveland*, 925 F.3d 793, 820–21 (6th Cir. 2019) ......... vi, 13, 20

*Jones v. City of Elyria, Ohio,* 947 F.3d 905, 920 (6th Cir. 2020).........................20

*Kennedy v. City of Villa Hills,* 635 F.3d 210, 214 (6th Cir. 2011) ................. 4, 5, 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)3

*McCurdy v. Montgomery Cty.*, 240 F.3d 512, 516 (6th Cir. 2001) .........................21

*Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)....................................................19

*Mills v. Barnard*, 869 F.3d 473, 479–80 (6th Cir. 2017).................................. 12, 13

*Nieves v. Barlett,* 139 S.Ct. 1715, 1727 (2019) .....................................................16

*Novak v. City of Parma,* 932 F.3d 421, 427 (6th Cir. 2019)..................................16

*Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) ............................................9

*Perez v. Oakland Cty.*, 166 F.3d 416, 427 (6th Cir. 2006)....................................18

*Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988)..................................................22

*Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).................18

*Scott v. Harris,* 550 U.S. 372, 380 (2007) ................................................................3

*Sheffey v. City of Covington*, 564 Fed.Appx. 783, 793 (6th Cir.2014)....................15

*Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) .............................................22

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) ............................... 13, 20

*Terry v. Ohio,* 392 U.S. 1, 27 (1968) .....................................................................6, 9

*Texas v. Brown,* 460 U.S. 730, 747–48 (1983)........................................................12

*Thomas v. Cohen*, 304 F.3d 563 (2003)............................................................ 11, 12

*Tucker v. City of Richmond,* 388 F.3d 216, 220 (6th Cir. 2004) .............................17

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997) .................................................15

*United States v. Bradshaw*, 102 F.3d 204, 211 n.13 (6th Cir. 1996)........................9

*United States v. Bradshaw,* No. 19-5643, 2020 U.S. App. LEXIS 13443 (6th Cir.
    Apr. 24, 2020)..................................................................................................... vi, 6

*United States v. Jacobsen*, 466 U.S. 109, 120–21 (1984) ................................. 10, 11

*United States v. Lanier*, 520 U.S. 259, 271 (1997)..................................................19

*United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005) ...................................4

*United States v. Pearce,* 531 F.3d 374, 380-81 (6th Cir. 2008) .................................4

*United States v. Perez*, 477 Fed.Appx. 337, 341 (6th Cir.2012) .............................10

*United States v. Place*, 462 U.S. 696, 700–01 (1983) ...................................... 10, 11

*United States v. Sanders*, 719 F.2d 882, 887 (6th Cir.1983) ...................................11

*United States v. Saperstein*, 723 F.2d 1221, 1231 (6th Cir.1983).........................11

*United States v. Shank*, 543 F.3d 309, 313 (6th Cir.2008) ......................................10

*Wells v. City of Dearborn Heights*, 538 Fed.Appx. 631, 640 (6th Cir.2013)..........15

*Wyatt v. Jones*, No. 119CV02718STADKV, 2020 WL 1821833, at *3 (W.D. Tenn.
    Apr. 10, 2020)........................................................................................................4

**Rules**

Fed. R. Civ. Pro. 56(a) .................................................................................................2

**Constitutional Provisions**

IV Amend.....................................................................................................................10

## STATEMENT OF ISSUES PRESENTED

WHETHER PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT OFFICERS VIOLATED PLAINTIFF'S CLEALY ESTABLISHED CONSTITUTIONAL RIGHTS WHEN THEY PARTICPATED OR FAILED TO INTERVENE IN THE UNLAWFUL DETAINMENT, ARREST, AND CITING OF PLAINTIFF WITH A CRIME HE DID NOT COMMIT IN RETALIATION FOR CONSTITUTIONALY PROTECTED CONDUCT WHEN HE RECORDED DEFENDANT OFFICERS AND REFUSED TO PRODUCE HIS IDENTIFICATION WHEN ASKED BY FORMER CHIEF SETTLES.

Plaintiff: Yes

## CONTROLLING/APPROPRIATE AUTHORITY

*Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002)

*Thomas v. Cohen*, 304 F.3d 563 (2003)

*City of Canton v. Harris*, 489 U.S. 378 (1989)

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019)

*United States v. Bradshaw,* No. 19-5643, 2020 U.S. App. LEXIS 13443 (6th Cir. Apr. 24, 2020)

## STATEMENT OF FACTS

On June 14, 2018, Mr. Norris was walking and video recording the rear parking lot of the Romulus Police Department. (Ex. 1, Video of Incident; Ex. 2, Chief Settles Discovery Responses, p. 17, 20; Ex. 3, Dep. of Norris, p. 60-76). A vehicle approached, and Mr. Norris moved out of the way in response to the driver's honk. (Ex. 1). While recording, Defendant Reyna and Defendant Settles approached Mr. Norris. (Ex. 2, p. 17, 20; Ex. 4, Officers Police Reports, p. 3). Defendant Settles informed Mr. Norris that he had a problem with him recording police officers. (Ex. 1; Ex. 2, p. 17, 20). Because Mr. Norris was "extremely evasive," and "refus[ed] to tell officers his name," Defendant Settles conducted a pat-down. (Ex. 2, p. 17, 20). Mr. Norris backed away while Defendant Settles attempted to search him and continued to back away from the Defendants as Defendant Settles called for a marked unit. (*Id.*).

*After the pat-down,* Defendant Settles observed a vehicle illegally parked on the wrong side of the road. (*Id.*). Defendant Settles asked Mr. Norris if the illegally parked vehicle was his, Mr. Norris did not respond. (*Id.*). Defendant Reyna, however, erroneously informed Defendant Settles it was Mr. Norris' vehicle. (Ex. 2, p. 17, 20; Ex. 4, p. 3, 7). Defendant Reyna made this accusation because the car was parked on the same street as Mr. Norris was recording. (Ex. 5, Dep. of Reyna, p. 14:22-15:4). The illegally parked car, in addition to filming, was Defendant Reyna's

1

basis for detaining Mr. Norris. (*Id*. at p. 26:5-27:18). Mr. Norris was then placed in handcuffs, searched by Defendants and placed in a police cruiser. (Ex. 4, p. 3, 6). Initially, Mr. Norris was being issued a citation for an illegally parked vehicle, upon investigation, Defendants ascertained that the vehicle did not belong to Mr. Norris. (*Id*. at p. 7; Ex. 2, p. 17-21). After this discovery, Defendants cited Mr. Norris for loitering/disorderly conduct, in violation of local ordinance 36-170. (Ex. 6, Citation).

While each Defendant answered in their interrogatories that Plaintiff "was attempting to either gain access and/or access information to a secured area" (Ex. 7, Defs' Interrogatory Responses to Question No. 21), each Defendant testified that they either did not actually write this, did not believe it was true, or did not know whether it was true. (Ex. 5, p. 8:11-9:1; Ex. 8, Dep of Orme, p. 6:15-7:1; Ex. 9, Dep. of Harkin, p. 7:7-12; Ex. 10, Dep. of Hathorn, p. 31:24-33:14). In his report, Chief Settles wrote that he believed "Norris behavior at this point is consentient [sic] amongst subjects who try and conceal their identity to law enforcement to prevent discovery of outstanding warrants or conceal their identities when up to no good." (Ex. 2, p. 17, 20). The charge was dismissed approximately one month after the incident. (Ex. 11, ROA).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the record evidence shows that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," nor the existence of "some metaphysical doubt as to the material facts," will defeat a motion for summary judgment. *Anderson,* at 247-248; *Matsushita,* at 586. Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## ARGUMENT

## I. DEFENDANTS VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

### 1. Fourth Amendment

3

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Unreasonable seizure, unlawful arrest, and warrantless entry are civil rights violations squarely protected by the Fourth Amendment. *Wyatt v. Jones*, No. 119CV02718STADKV, 2020 WL 1821833, at *3 (W.D. Tenn. Apr. 10, 2020).

## A.    Unlawful Arrest

A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. "Whether probable causes exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *United States v. Pearce,* 531 F.3d 374, 380-81 (6th Cir. 2008). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005). "A [police officer] is entitled to qualified immunity" on a false arrest "if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the [police officer]." *Kennedy v. City of Villa Hills,* 635 F.3d 210, 214 (6th Cir. 2011). Thus, a court should grant the officer qualified immunity, "even if a factual dispute exists about the objective reasonableness of the officer's actions," if when viewing the facts in the light most

favorable to the plaintiff, "an officer reasonably could have believed that the arrest was lawful." *Id.*

When viewing this claim, "state law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Id.* at 215. Romulus City Ordinance 36-170 provides:

No person shall loiter in a public building, or on a public street, sidewalk or parking lot, or any premises or other public place or places open to the general public in such a manner as to:

(1) By words or conduct, harass, assault, molest or intimidate any other person;

(2) Interfere with any person's use of said public building, street, sidewalks, parking lot, public places or places open to the general public after having been requested to cease such interference by a peace officer;

(3) Create a reasonable belief that a breach of the peace is imminent or a reasonable concern for the safety of persons or property in the vicinity:

a. Among the circumstances which may be considered in determining whether there is a reasonable belief that a breach of peace is imminent or a reasonable concern for the safety of persons or property are the following:

1. The person takes flight upon appearance of a police officer or endeavors to conceal himself or any object;

2. That the person is one of a group threatening, making threatening gestures at, or otherwise menacing persons in the vicinity;

3. That the person appears to be illegally consuming or using or concealing illegal consumption or use of alcoholic beverages or controlled substances;

4. The person is one of a group which is blocking the free passage of pedestrians or vehicular travel on a street, sidewalk or parking lot.

b. The term "harass," as used in this section, shall include, but not be limited to, the use of any personally abusive epithets, words, language or conduct of an offensive nature, which when addressed to or directed at a reasonable person, are inherently likely to provoke a reaction of fear, anger, or apprehension.

c. Prior to an arrest under this section, a peace officer shall afford the person an opportunity to dispel any concern or belief which would otherwise be warranted by requesting the person to explain his presence and conduct, unless flight by the person or other circumstances make it impractical or futile.

A law-enforcement officer may conduct a brief, investigatory stop of an individual if there is a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000); *see also Terry v. Ohio,* 392 U.S. 1, 27 (1968). Despite reasonable suspicion being a less demanding standard than probable cause, a *Terry* stop cannot be based on an officer's "inchoate and unparticularized suspicion or 'hunch.'" *Terry,* 392 U.S. at 27; *Wardlow,* 528 U.S. at 123-24. Police officers must have a "proper basis for the stop" and their conduct must be "reasonably related in scope to the situation at hand." *United States v. Bradshaw,* No. 19-5643, 2020 U.S. App. LEXIS 13443, at *5 (6th Cir. Apr. 24, 2020) (an individual's proximity to location of crime where burglary alarm sounded in shopping center did not give basis to reasonably believe individual was involved in a crime, act of "cutting through the grassy area near the store, which most people did not usually do, was minimally probative, if at all, of any suspicious activity.").

Defendants conducted an unlawful *Terry* stop of Mr. Norris. Defendants lacked any reasonable, articulable suspicion for stopping Mr. Norris. In fact, Defendant Settles stopped and searched Mr. Norris for being "evasive," and "refusing to give his name," neither of which, without more, are indicative of criminal activity. Significantly, Defendant Settles, in his report of the incident,

mentions noticing the illegally parked vehicle *after* conducting the *Terry* stop. Defendant Settles initially told his officers to issue a citation for Mr. Norris for illegally parking, however, upon further investigation the Defendants discovered the vehicle did not belong to Mr. Norris. (Ex. 2, p. 17-21). Therefore, Defendants did not have reasonable suspicion to believe criminal activity was afoot allowing for the *Terry* stop based on allegations of an illegally parked car. Further, the mere fact that a person is standing on the same street as an illegally parked is not reasonable suspicion of unlawful activity, i.e. that the individual is the owner of the illegally parked car, instead it is an insufficient "inchoate and unparticularized suspicion or hunch." *Terry*, 329 U.S. at 27. Even if Defendant Officers had a reasonable basis to stop and talk to Mr. Norris, because Michigan does not have a 'stop and identify' statute, a refusal to identify oneself to a police officer in this state is "not itself a violation of the law" and does not provide probable cause to arrest. *People v. Barrera*, No. 338762, 2019 Mich. App. LEXIS 22, at *13 n.3 (Ct. App. Jan. 8, 2019) (citing *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004)).

Further, Defendants lacked any probable cause to issue a citation for Loitering/Disorderly Person to Mr. Norris. Mr. Norris did not "by words or conduct, harass, assault, molest or intimidate any other person." Mr. Norris did not "interfere with any person's use of said public building, street, sidewalks, parking lot, public places or places open to the general public after having been requested to cease such

interference by a peace officer." Any argument that he did interfere by standing on the sidewalk while Defendant Harkin attempted to enter to parking lot is unavailing as he moved back after she honked her horn at him. Finally, Mr. Norris did not "create a reasonable belief that a breach of the peace is imminent or a reasonable concern for the safety of persons or property in the vicinity," additionally, none of the non-exhaustive list of factors in determining if this section applies are present here. Mr. Norris was not in a group, was not consuming alcohol or controlled substances, and was not making threatening gestures or threatening anyone in the vicinity. Therefore, Defendants did not have probable cause to believe Mr. Norris was Loitering or a Disorderly Person as defined by the Romulus City Ordinance.

## B.    Unlawful Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). An exception to this requirement was set forth in *Terry,* for limited investigatory seizures. "[A] policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (footnote omitted). To establish that a seizure

8

not supported by probable cause was "reasonable," the law enforcement officer must have a reasonable, articulable suspicion that *crime is afoot. Terry,* 392 U.S. at 21–22 (emphasis added). The primary issue as to the initial stop is whether it was justified at its inception under the less stringent "reasonable suspicion" standard. *See United States v. Bradshaw*, 102 F.3d 204, 211 n.13 (6th Cir. 1996). "The touchstone of [court's] analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977). Determining reasonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id*. at 109 (quoting *Brignoni-Ponce*, 422 U.S. at 878).

Defendants lacked any reasonable suspicion that crime was afoot. In fact, the initial encounter initiated by Defendants was due to his recording of the police station. Mr. Norris was subjected to a *Terry* stop because he was being "evasive" and "refus[ed] to give his name," neither of which provide any indication that crime is afoot. In Defendant Settles' report of the incident, he specifically mentions noticing the illegally parked vehicle, Defendant Reyna's justification for the *Terry* stop and search, *after* he conducted the search of Mr. Norris. "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United*

9

*States v. Shank*, 543 F.3d 309, 313 (6th Cir.2008). For an officer's suspicion to be reasonable, he "must point to specific and articulable facts supporting his suspicion." *United States v. Perez*, 477 Fed. Appx. 337, 341 (6th Cir.2012). Defendants are unable to point to any specific and articulable facts supporting their suspicion that criminal activity was afoot when Mr. Norris was recording the police station exterior.

### C.      Unlawful Seizure

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." IV Amend. The literal text of the Fourth Amendment accordingly extends its protection to unreasonable seizures of personal property, as well as those seizures that involve the individual. *See Farm Labor Organizing Committee v. Ohio State Hwy. Patrol*, 308 F.3d 523, 543 (6th Cir.2002) (citing *United States v. Place*, 462 U.S. 696, 700– 01 (1983)). *See also United States v. Jacobsen*, 466 U.S. 109, 120–21 (1984) (detention of a package sent by private carrier was held to be a "seizure" subject to the reasonableness requirement of the Fourth Amendment). Thus, a seizure of personal property requires probable cause just like the seizure of a person. *Place,* 462 U.S. at 701.

An exception does exist, however, in those situations that involve extremely brief detentions of personal effects based upon reasonable suspicion that falls short

of probable cause so long as any such detention is minimally intrusive. *Farm Labor Organizing Committee*, 308 F.3d at 544 (citing *Place*, 462 U.S. at 706). Such situations nevertheless require that the Government have at least reasonable suspicion that the item at issue contains contraband or evidence of a crime. *Place*, 462 U.S. at 706 ("Some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interest that strong countervailing Government interest will justify seizure based only on a specific articulable fact that the property contains contraband or evidence of a crime."). *See also United States v. Saperstein*, 723 F.2d 1221, 1231 (6th Cir.1983) ("Seizures of personal effects when based on anything less than probable cause" are permitted only to the extent that such seizures satisfy the standards of reasonableness that arise under a *Terry* investigative detention).

To determine the legality of any seizure of personal property, the Court therefor must first determine whether the detaining officer has a reasonable and articulable suspicion connected with criminal activity. *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir.1983). In *Thomas v. Cohen*, 304 F.3d 563, 569–70, cert. denied, 538 U.S. 1032 (2003), the Sixth Circuit explained that the definition for the seizure of an item flows from the same Fourth Amendment source as that of the seizure of a person so that any meaningful interference, albeit relatively brief, may be deemed a seizure. *Thomas*, 304 F.3d at 569–70 (citing *Jacobsen*, 466 U.S. at 113).

11

*Thomas* explains that "this expansive definition is necessary because a seizure threatens an individual's distinct interest in retaining possession of his or her property." *Id*. (citing *Texas v. Brown,* 460 U.S. 730, 747–48 (1983)). Thus, a seizure subject to Fourth Amendment restraints will occur whenever a Government agent in some fashion meaningfully interferes with the possessory interest of the property owner however briefly. *Thomas*, 304 F.3d at 572.

As discussed above, Defendants lacked any reasonable suspicion that criminal activity was afoot. Even if, however, Defendants had reasonable suspicion to seize and arrest Mr. Norris, there is no articulable, reasonable suspicion that the camera contained contraband or evidence of criminal activity. Therefore, the seizure of the camera without probable cause or reasonable suspicion was unconstitutional.

### D.    Malicious Prosecution

The Fourth Amendment also protects private individuals against unjustified, or malicious, criminal prosecution. *Mills v. Barnard*, 869 F.3d 473, 479–80 (6th Cir. 2017). To make out a § 1983 claim for malicious prosecution, a plaintiff must establish: "(1) that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty ... apart from the initial seizure; and (4) that the criminal proceeding must have been

12

resolved in the plaintiff's favor." *Id*. (internal quotation marks omitted) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

Liability for malicious prosecution is not limited solely to those who made the decision to prosecute the plaintiff. Rather, liability also extends to those who significantly impacted that decision. Liability extends to an officer who included falsehoods in her investigatory materials, knowing that prosecutorial reliance is likely, where those materials influenced the prosecutor's ultimate decision to bring charges. *Jackson v. City of Cleveland*, 925 F.3d 793, 820–21 (6th Cir. 2019) (citing *Sykes*, 625 F.3d at 316).

Here, criminal proceedings were instigated by Defendants for Loitering/Disorderly Person, as discussed above there was a lack of probable cause for this arrest and the criminal proceedings terminated in his favor when the charges were ultimately dismissed. The video shows that the reason the Defendants stopped and charged Mr. Norris with a crime was due to his recording of the building and officers. Defendants had a difficult time determining when Mr. Norris became disorderly, circularly saying that he was disorderly when he resisted the handcuffs which were being placed on him, ostensibly, because of some prior disorderly or unlawful conduct. Additionally, the Defendants initially decided to issue a citation for an illegally parked vehicle, however, they had to alter that scheme when it was determined that the vehicle did not belong to him. After that discovery, the

13

Defendants shifted to issuing a citation for Loitering/Disorderly Person. The police reports contradict the video of the event and demonstrate that these falsehoods were made to facilitate charges being brought against Mr. Norris. (Ex. 1; Ex. 2; Ex; 4).

No reasonable police officer would have believed there was probable cause to arrest and charge Mr. Norris with a crime. Defendant Hathorn, who authored the ticket, did not know what crime Mr. Norris committed. (Ex. 10, p. 51:4-52:3, 36:5-15). Defendant Harkin had discussions with the prosecutor about her report, but did not share her opinion that Mr. Norris had not committed a crime. (Ex. 9, p. 9:10-10:18). Defendant Reyna and Defendant Settles, as the initiating officers, knew there was no basis to arrest Mr. Norris. After detaining Mr. Norris and learning of his identity, but prior to issuing him a citation, Defendant Settles stated that Mr. Norris had sued the department in the past. (Ex. 3, p. 70:15-71:11). When "police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." *Syke*s, 625 F.3d at 317 (citations omitted).

### E.    Failure to Intervene

In order to succeed on a failure to intervene claim, a plaintiff must demonstrate that the officers "(1) observed or had reason to know that [the constitutional harm] would be or was being used, and (2) had both the opportunity and the means to

prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. Appx. 783, 793 (6th Cir.2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997)) (internal alterations omitted). That is, the Defendants had to perceive was what going on and have sufficient time to intercede to stop the constitutional violation. *Burgess v. Fischer,* 735 F.3d 462, 475 (6th Cir. 2013). Officers cannot be held liable for a failure to intervene if they lacked "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 640 (6th Cir.2013).

Here, there were no split-second decisions or a quickly unraveling situation. Defendants walked up to Mr. Norris, asked him why he was recording the police station. Then, Defendant Settles requested a marked unit to assist, and, along with Defendant Reyna, walked towards Mr. Norris. Defendant Settles then searched and, with Defendant Reyna's assistance, seized Mr. Norris. He was placed in the back of a police cruiser, and was given a citation. When the other Defendants arrived to assist Defendants Settles and Reyna, they all had a "realistic opportunity to intervene and prevent harm" caused by the illegal and unconstitutional search and seizure of Mr. Norris and his property.

### 2. First Amendment
#### A. Retaliatory Arrest

The Sixth Circuit has identified three elements that a plaintiff must prove to establish a claim of retaliation: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary

firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy v. City of Villa Hills,* 635 F.3d 210, 217 (6th Cir. 2011).

Additionally, to prove a retaliatory arrest, a plaintiff must prove a lack of probable cause, or through "objective evidence that [an individual] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Barlett,* 139 S. Ct. 1715, 1727 (2019).

To meet the last element of First Amendment retaliatory arrest, Plaintiff must identify sufficient evidence showing that an arrest was "motivated at least in part, by the exercise of his constitutional rights." *Novak v. City of Parma,* 932 F.3d 421, 427 (6th Cir. 2019). Importantly, "[b]ecuase direct evidence of motive is difficult to produce, claims involving proof of a defendant's intent seldom lend themselves to summary disposition and circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment." *Kennedy,* 635 F.3d at 218.

As discussed above, Mr. Norris' stop, seizure, and the issuance of the citation was made without probable cause and/or reasonable suspicion. Here, Mr. Norris was engaged in protected conduct, namely recording police officers and the exterior of the police station. Due to his recording of the police station and police officers, Mr. Norris was stopped, searched, had his camera seized, was handcuffed and placed in

16

a police cruiser, and was issued a citation. Due to Defendant Settles' and Reyna's comments that they took issue with Mr. Norris' recording of the police station and officers, the adverse action against Mr. Norris was motivated, at least in part by his protected conduct.

### 3. Qualified Immunity

As discussed above, Defendants violated Mr. Norris' constitutional rights; these rights were clearly established at the time of the violation.

This Court uses a two-pronged test to evaluate whether qualified immunity is appropriate by asking (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). While the plaintiff bears the ultimate burden of showing that the defendant is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his conduct was objectively reasonable under then-existing law. *Tucker v. City of Richmond,* 388 F.3d 216, 220 (6th Cir. 2004). The burden then shifts to the "plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire v. Schubert*, 205 F.3d

17

303, 311 (6th Cir. 2000); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

"To determine whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits. An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Cahoo v. SAS Analytics Inc*., 912 F.3d 887, 898 (6th Cir. 2019). "[T]he lack of Supreme Court or Sixth Circuit precedent is not a sufficient condition for concluding that the law is unclear on the subject and [thus that] qualified immunity must be granted to a defendant." *Perez v. Oakland Cty*., 166 F.3d 416, 427 (6th Cir. 2006). "[O]fficials can be on notice that his conduct violates established law even in novel factual situations." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The salient question is whether the state of the law gave the defendant fair warning that their alleged conduct was unconstitutional. *Id*.

The law is clearly established that "[a]ny arrest, whether formal or de facto, requires probable cause." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). Probable cause requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is

about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). As discussed above, Mr. Norris' arrest was made without any probable cause he had committed a crime.

"The general proposition ... that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Nevertheless, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (alteration in original) (citations omitted). In all, the most important question in the inquiry is whether a reasonable government officer would have "fair warning" that the challenged conduct was illegal. *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Here, the 4th Amendment itself gives officers fair warning that any searches and seizures made without probable cause or reasonable suspicion are unconstitutional. As discussed above, no reasonable officer could have believed that probable cause or reasonable suspicion existed for a search or seizure of Mr. Norris.

19

It is also well established that police officers may be held liable for malicious prosecution when they knowingly include false statements in their investigative materials, where those materials influence the ultimate decision to prosecute the plaintiff. *See, e.g., Sykes*, 625 F.3d at 314; *Jackson,* 925 F.3d at 820–21. A reasonable officer would thus have known at the time of Mr. Norris' prosecution that such conduct could subject her to liability. As a result, Mr. Norris' malicious-prosecution claim also survives the officers' qualified immunity assertions. *See also Jones v. City of Elyria, Ohio,* 947 F.3d 905, 920 (6th Cir. 2020).

"[I]t is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) (citing cases). Further, "the courts that have considered qualified immunity in the context of a retaliation claim have focused on the retaliatory intent of the defendant" rather than on the retaliatory action the defendant allegedly undertook. *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998). This is because "[t]he unlawful intent inherent in such a retaliatory action places it beyond the scope of a police officer's qualified immunity if the right retaliated against was clearly established." *Id*. Recognizing that the unlawful intent aspect of a public official's retaliatory action violates clearly-established law, this Court has denied qualified immunity to a police officer who arrested a citizen in retaliation for protesting and failing to comply with his order to return to his home, *McCurdy v.*

20

*Montgomery Cty.*, 240 F.3d 512, 516 (6th Cir. 2001), and to a police officer who effectuated an arrest in retaliation for being called a derogatory term, *Greene v. Barber*, 310 F.3d 889, 897–98 (6th Cir. 2002).

When the events at issue occurred, the right to be free from retaliation at the hands of police officers for asserting one's First Amendment rights was "sufficiently clear" that a reasonable officer would have understood that retaliating against Mr. Norris as a result of his protected conduct would violate his First Amendment rights. *See al-Kidd*, 563 U.S. at 741. Further, just as the police officers in *McCurdy* and *Greene* should have known that arresting someone in retaliation for asserting his or her First Amendment rights violated clearly-established law, Defendants should have known seizing, searching, and issuing a citation in retaliation of Mr. Norris' protected conduct violated the First Amendment.

### 4. Supervisory Liability

Section 1983 liability cannot be premised upon mere allegations of respondeat superior, i.e., supervisory liability; rather, a defendant can only be liable under Section 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Hays v. Jefferson County*, 668 F.3d 869, 874 (6th Cir. 1982) A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger Section

21

1983 liability. *See Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under Section 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999).

Here, Defendant Settles was personally involved in the unconstitutional conduct. He stopped and seized Mr. Norris, searched him, and seized his camera, all without probable cause or reasonable suspicion that criminal activity was afoot. Additionally, Defendant Settles was present for other unconstitutional behavior by his co-Defendants, involving Defendant Reyna's unconstitutional seizure, and search of Mr. Norris. Because Defendant Settles was personally involved in unconstitutional actions, he liable in his individual capacity as the supervisor of the Romulus Police Department for maintaining unlawful policies and failing to train his subordinates as discussed herein.

### 5. Municipal Liability

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 659, 692 (1978)).

### A.     Policy

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick,* 131 S. Ct. at 1359. To

state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess,* 735 F.3d at 478.

"To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). "[A] plaintiff would not need to establish a pattern of past misconduct where the actor was a policymaker with final policymaking authority." *Burgess*, at 479.

Defendant Settles, the former Chief of Romulus Police and the Director of Public Safety, personally questioned, detained, and searched Mr. Norris for recording the police station and police officers. (Ex. 2, p. 2)[1]. Defendant Settles also directed officers under his command to issue the citation, initially for an illegally parked vehicle, and later for loitering/disorderly conduct. This evidences a policy by

---

[1] The Director of Public Safety oversees the Police and Fire Departments for the City of Romulus. *See* http://romulusgov.com/departments/public_safety/index.php. Defendant Settles is no longer the Director of Public Safety or Chief of Police for the City of Romulus. *Id*.

the Romulus Police Department because its final policymaker for police decisions, the Chief of Police and Director of Public Safety, personally engaged in unconstitutional behavior, ratified the unconstitutional behavior of his subordinates, ordered officers under his command to commit further unconstitutional actions and seized Mr. Norris' personal property without probable cause, reasonable suspicion, or any legal justification.

## B.    Supervise and Train

Inadequate police training may serve as the basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, [] the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390.

Similarly, the City of Romulus fails to train its officers, which is shown by its Chief of Police violating Mr. Norris' constitutional rights. Defendants acted with deliberate indifference in seizing Mr. Norris and his property, searching him, and citing him without probable cause or reasonable suspicion. Due to Defendant Settles' participation in the unconstitutional conduct as well as his failure to discipline or train his officers regarding their unconstitutional behavior, the City has inadequately

trained officers at every level in its Police Department. The failure to adequately train and supervise was the moving force behind Mr. Norris' injuries. With proper training and supervision, Romulus Police Officers would not unconstitutionally stop, search, seize and issues citations for recording Police Department buildings and police officers.

## II.    DEFENDANT SETTLES' FAILURE TO SIT FOR A DEPOSITION

Defendant Settles has repeatedly refused to sit for a deposition. Accordingly, as discussed in Plaintiff's concurrently filed motion in limine, Plaintiff respectfully request this court preclude Defendant Settles from testifying, allow Defendant Settles' statements into evidence only if Plaintiff requests it, and not allow Defendants to rely on his statements. See Fed. R. Civ. Pro. 37(d).

## CONCLUSION

For the reasons stated herein, Plaintiff Norris respectfully request this Court Grant his Motion for Summary Judgment.

Respectfully Submitted,

EXCOLO LAW, PLLC

/s/ Solomon M. Radner
Solomon M. Radner
Attorney for Plaintiff
26700 Lahser Rd., Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com

Dated: May 7, 2020

## <u>CERTIFICATE OF SERVICE</u>

Undersigned hereby states that on May 7, 2020, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the Court's CM/ECF electronic filing system.

*/s/ Solomon M. Radner*