**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BILLY GENE NORRIS,

    Plaintiff,    CASE NO.:  19-cv-10782
            HON. TERRENCE G. BERG
v.           MAG. JUDGE R. STEVEN WHALEN

CHIEF JADIE R. SETTLES;
OFFICER A. HATHORN;
OFFICER CHRISTOPHER REYNA;
DETECTIVE C. HARKINS;
CITY OF ROMULUS, a political
subdivision of the State of Michigan,

    Defendants.
_____

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

   NOW COME the above-named Defendants, by and through their

attorneys, PLUNKETT COONEY, and for their Response to Plaintiff's Motion

for Summary Judgment, state as follows:

   Defendants are entitled to qualified immunity and did not violate

Plaintiff's constitutional rights as more fully explained in the attached brief.

   **WHEREFORE**, Defendants respectfully request that this Honorable

Court deny Plaintiff's Motion for Summary Judgment for the reasons set forth

in their Brief in Support of Defendants' Response to Plaintiff's Motion for

Summary Judgment.

Respectfully submitted,

PLUNKETT COONEY

By: /s/ Audrey J. Forbush
AUDREY J. FORBUSH (P41744)
Attorney for Defendants
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI 48502 (810) 342-7014
aforbush@plunkettcooney.com

Dated: June 9, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BILLY GENE NORRIS,

      Plaintiff,            CASE NO.:  19-cv-10782
                                 HON. TERRENCE G. BERG
v.                             MAG. JUDGE R. STEVEN WHALEN

CHIEF JADIE R. SETTLES;
OFFICER A. HATHORN;
OFFICER CHRISTOPHER REYNA;
DETECTIVE C. HARKINS;
CITY OF ROMULUS, a political
subdivision of the State of Michigan,

      Defendants.

_____

## BRIEF IN SUPPORT OF
## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF CONTENTS.................................................................................................i

INDEX OF AUTHORITIES ....................................................................................... ii

ISSUES PRESENTED................................................................................................. v

CONTROLLING APPROPRIATE AUTHORITY ...................................................vi

INTRODUCTION....................................................................................................... 1

COUNTER-STATEMENT OF MATERIAL FACTS ............................................... 1

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ............................................................................................................... 6

    I.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS ........................................... 6

        1.    Defendants did not Violate Plaintiff's Fourth Amendment Rights ........................................................... 7

            A.    Unlawful Search and Seizure and Arrest ......................... 8

            B.    Malicious Prosecution........................................................... 13

            C.    Failure to Intervene .............................................................. 15

        2.    Defendants did not Violate Plaintiff's First Amendment Rights ........................................................... 17

            A.    Retaliatory Arrest .................................................................. 17

        3.    Plaintiff's Claim of Violation of 42 U.S.C. § 1983 Fails as a Matter of Law where there was no Active Unconstitutional Behavior .............................................. 18

        4.    Plaintiff's Claim of Municipal Liability does not Identify a Prohibited Policy or Establish a Failure to Supervise or Train.................................................................... 19

    II.    DEFENDANT SETTLES HAS NOT FAILED TO PRESENT FOR DEPOSITION AS SANCTIONABLE UNDER THE COURT RULES............................................................................................... 21

CONCLUSION ......................................................................................................... 22

PROOF OF SERVICE................................................................................................ 24

## INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144; 90 S.Ct. 1598; 26 L.Ed.2d 142 (1970) ........................................ 5

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ........................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986) ..................................... 5

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ............................ 6, 7

*Berry v. City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) .......................................................................... 20

*Burgess v. Fischer*,
    735 F.3d 462 (6th Cir. 2013) .......................................................................... 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................... 5

*City of Canton v. Harris*,
    489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) ............................... 20

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988) ......................................................................................... 20

*Crawford v. Geiger*,
    996 F.Supp.2d 603 (N.D. Ohio 2014) ............................................................ 17

*Doe v. Claiborne Co., Tenn.*,
    103 F.3d 495 (6th Cir. 1996) .......................................................................... 20

*Dorsey v. Barber*,
    517 F.3d 389 (6th Cir. 2008) .......................................................................... 12

*Estate of Carter v. City of Detroit*,
    408 F.3d 305 (6th Cir. 2005) .......................................................................... 21

*Everson v. Leis*,
    556 F.3d 484 (2009) ........................................................................... 6, 7, 10, 18

*Foster v. Walsh*,
    864 F.2d 416 (6th Cir. 1988) .......................................................................... 20

*Haynes v. City of Circleville*,
474 F.3d 357 (6th Cir. 2007) ................................................................ 6, 7

*Higgason v. Stephens*,
288 F.3d 868 (6th Cir. 2002) ..................................................................... 6

*Hollaran v. Duncan*,
92 F.Supp.3d 774 (6th Cir. 2015).......................................................... 15

*Hunter v. Bryant*,
502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)...................................... 13

*Illinois v. Wardlow*,
528 U.S. 119 (2000)..................................................................................... 8

*Jackson v. City of Cleveland*,
925 F.3d 793 (6th Cir. 2019) ................................................................ 19

*Kaupp v. Texas*,
538 U.S. 626, 123 S. Ct. 1843, 155 L.Ed.2d 814 (2003) .................................. 11

*Kennedy v. City of Villa Hills*,
635 F.3d 210 (6th Cir. 2011) ................................................................ 17

*Little Hocking Water Ass'n., Inc. v. E.I. Du Pont De Nemours & Co.*,
94 F. Supp.3d 893 (2015) ........................................................................ 22

*Malley v. Briggs*,
475 U.S. 335 (1986)..................................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..................................................................................... 5

*Miller v. Calhoun County*,
408 F.3d 803 (6th Cir. 2005) ................................................................ 20

*Monell v. Department of Social Services of the City of New York*,
436 U.S. 658, 98 S.Ct. 2018 (1978) ........................................................ 20

*Nieves v. Bartlet*,
139 S. Ct. 1715, 204 L.Ed.2d 1 (2019) ................................................ 18

*Odom v. Wayne County*,
482 Mich 459 (2008) ................................................................................ 13

*Reichle v. Howards*,
566 U.S. 658, 132 S. Ct. 2088, 182 L.Ed.2d 985 (2012)..................................7

*Risbridger v. Connelly,*
   275 F.3d 565 (6th Cir. 2002) ....................................................... 13

*Samaan v. St. Joseph Hosp.,*
   274 F.R.D. 41 (D. Me. 2011) ....................................................... 22

*Seales v. City of Detroit,*
   --F.3d--, 2020 WL 246307, No. 19-1555 (6th Cir. 2020) ............................. 16

*Sheffey v. City of Covington,*
   564 Fed.Appx. 783 (6th Cir. 2014) ................................................. 15

*Smith Wholesale Co. Inc., R.J. Reynolds Tobacco Co.,*
   477 F3d 854 (6th Cir. 2007) ........................................................ 6

*Sutton v. Metro. Gov't of Nashville & Davidson County,*
   700 F.3d 865 (6th Cir. 2012) ...................................................... 10

*Sykes v. Anderson,*
   625 F.3d 294 (6th Cir. 2010) ...................................................... 14

*Terry v. Ohio,*
   392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) .................. 8, 9, 10, 14, 21

*U.S. v. Atchley,*
   474 F.3d 840 (6th Cir. 2007) ....................................................... 9

*Wood v. City of Detroit,*
   323 Mich App 416, 917 N.W.2d 709 (2018) .......................................... 16

## **Rules**

Fed. R. Civ. P. 37 ..................................................................... 22

Fed. R. Civ. P. 56(a) .................................................................. 5

Federal Rule of Civil Procedure 56 .................................................... 5

## **Statutes**

42 U.S.C. § 1983 ........................................................ 6, 10, 14, 18, 19, 20

## **Constitutional Provisions**

First Amendment ................................................................... 17, 19

Fourth Amendment ............................................................. 7, 11, 13, 19

## **ISSUES PRESENTED**

WHETHER PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT OFFICERS VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS WHEN THEY PARTICIPATED OR FAILED TO INTERVENE IN THE UNLAWFUL DETAINMENT, ARREST AND CITING OF PLAINTIFF WITH A CRIME HE DID NOT COMMIT IN RETALIATION FOR CONSTITUTIONALLY PROTECTED CONDUCT WHEN HE RECORDED DEFENDANT OFFICERS AND REFUSED TO PRODUCE HIS IDENTIFICATION WHEN ASKED BY FORMER CHIEF SETTLES.

Defendant: No

Plaintiff: Yes

## CONTROLLING APPROPRIATE AUTHORITY

*Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008)

*Everson v. Leis*, 556 F.3d 484 (2009)

*Seales v. City of Detroit*, --F.3d--, 2020 WL 246307 No. 19-1555 (6th Cir. 2020)

*Terry v. Ohio*, 392 US 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)

**INTRODUCTION**

This case arises out of the Plaintiff's contact with the Romulus Police Department that he initiated. Plaintiff entered upon police department property blocking ingress to the Department parking lot, which precipitated the subject incident. Plaintiff now has what he wanted, a platform to complain about police action that was completely avoidable. Plaintiff's Motion for Summary Judgment contends Defendants had no reasonable suspicion to interact with him and since he ultimately committed no crime, the officers *must* have violated his rights. Defendants' position is Plaintiff's behavior necessitated the officers' involvement with him and Plaintiff has not met his burden of overcoming qualified immunity.

**COUNTER-STATEMENT OF MATERIAL FACTS**

1.      Plaintiff's "Statement of Facts" is not properly formatted in accordance with the Court's guidelines for filing a dispositive motion; however, Defendants will respond to each 'fact.'

2.      Defendants admit the day of the incident was June 14, 2018 and there is a video recording of Plaintiff's actions precipitating police interaction. **(Ex. 1, Video of Incident, ECF#16-2)**

1

3.     The video shows Plaintiff blocking ingress to Defendant City of Romulus' back parking lot and the key pad officers use to enter the parking lot. **(Ex. 1)**

4.     It was not known at the time that Plaintiff was traveling by foot, as Officer Reyna believed a car directly across the street from Plaintiff, and parked the wrong way on the street, belonged to Plaintiff. **(Ex. 2, Reyna Deposition, pp. 28-29, 39)**. Officer Reyna noticed the car as he was driving up to the employee parking lot and saw Plaintiff videotaping the parking lot and Officer Reyna's car as he drove in. **(Ex. 2, p. 39)**

5.     Plaintiff admits that while he was filming the police station at least one vehicle had to honk at him to get out of the way so that officer could gain entry. **(Ex. 3, Plaintiff's Deposition, pp. 47-48, 57-58)**

6.     Defendant Harkins was the individual who had to honk at Plaintiff to get out of the way and she submitted a report in this regard. **(Ex. 4, Harkins Deposition, pp. 12-13)(Ex. 5, Harkins Report)**

7.     As Harkins turned to enter the parking lot, she saw Chief Settles and Officer Reyna approach Plaintiff. **(Ex. 5)**

8.      Chief Settles asked Plaintiff if he could help him and asked him for his name. **(Ex. 1)(Ex. 5)(Ex. 6, Settles Memo)**

9.      Plaintiff repeatedly stated he would not give his name because he did not have to and because he was becoming agitated, Chief Settles attempted to conduct a pat-down as Plaintiff began backing away. **(Ex. 1)(Ex. 6)**

10.     Plaintiff continued to film and watch Chief Settles call for a back-up unit. **(Ex. 1)(Ex. 6)**

11.     Chief Settles observed a vehicle parked facing the wrong way on the road. **(Ex. 1)** Chief Settles asked Plaintiff if the vehicle was his, Plaintiff did not respond. **(Ex. 1)** Plaintiff admits he refused to respond. **(Ex. 3, pp. 72-73)**

12.     Officer Reyna informed Chief Settles it was Plaintiff's vehicle.  **(Ex. 1)(Ex. 7, Incident/Investigation Report)**

13.     Officer Reyna stated in addition to the illegally parked car that there were concerns for officer safety due to Plaintiff's actions. **(Ex. 3)** Specifically, Officer Reyna noted that "Norris refused to cooperate to show officers he was not a risk." **(Ex. 7, p. 4)(Ex. 2, pp. 26)**

14.     Officer Hathorn then arrived at the scene and assisted with briefly detaining Plaintiff to de-escalate the scene. **(Ex. 8, Hathorn Dep., pp. 9, 19)**

15.     After obtaining Plaintiff's identification and running the plate, it was determined that the subject vehicle did not belong to Plaintiff. **(Ex. 5)**

16.     Plaintiff was ultimately cited for loitering/disorderly conduct, in violation of local ordinance 36-170. **(Ex. 9, Citation)**

17.   Chief Settles wrote in his report that he believed "Norris behavior at this point is consentient [sic] amongst subjects who try and conceal their identity to law enforcement…when up to no good. **(Ex. 6)**

18.   Plaintiff was detained for less than 10 minutes. **(Ex. 3, p. 75**) He was given the ticket and allowed to leave. **(Ex. 3, p. 76)** His camera was returned to him the following day with the footage intact. **(Ex. 3, pp. 76, 86)**

19.   Defendant Harkins' attempted to return Plaintiff's video camera the same day but he had already left the scene. **(Ex. 5)**

20.   Following the incident, Plaintiff walked home and returned to the lobby of the police station with an iPad and began to film. **(Ex. 3, pp. 82-83)**

21.   Officer Orme's police car was used for the Plaintiff to sit in while Officer Hathorn wrote the citation for Plaintiff, other than that he had no decision making authority on the scene. **(Ex. 7, p. 6)**

22.   While Defendants' interrogatory responses **(Ex. 10)** may seem inconsistent with their deposition testimony, Officer Reyna's statement at the time reflected, "there were concerns of safety due to what Norris was recording." **(Ex. 7, p. 3)**

23.   Plaintiff's combative attitude and demeanor were noted by the court officer who heard his citations and reflected that Plaintiff, "demanded to

see a Judge, and would not be arraigned," to the point that the officer "walked off the bench." **(Ex. 11, Register of Actions)** The citation was dismissed.

24. Defendant Settles is immunocompromised and has recently undergone a heart transplant. **(Ex. 12, Letter from Henry Ford)** As a result, Defendants have been unable to schedule his deposition.

<u>**STANDARD OF REVIEW**</u>

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157; 90 S.Ct. 1598; 26 L.Ed.2d 142 (1970). "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249-250 (1986); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence

must be viewed in a light most favorable to the party opposing the motion.

*Smith Wholesale Co. Inc.*, *R.J. Reynolds Tobacco Co*., 477 F3d 854 (6th Cir. 2007).

Qualified immunity is a question of law for the Court, and plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007). The existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009).

## ARGUMENT

## I.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

The individual Defendants are entitled to qualified immunity with respect to Plaintiff's claims under the United States Constitution. "Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have know." *Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002). It protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-*Kidd, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011); citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words,

6

"officials are immune under the law clearly proscribed the actions they took." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Haynes, supra*.

The qualified immunity analysis involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson, supra*, 556 F.3d at 494. "To be clearly established, a right must be sufficiently clear that <u>every</u> reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>." *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). There was no violation of a constitutional right that would preclude qualified immunity in this case.

**1.** **<u>Defendants did not Violate Plaintiff's Fourth Amendment Rights</u>**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Ashcroft*, *supra*. The inquiry of violation is judged against an objective standard: would the facts available to the officer at the moment of

the seizure or the search 'warrant a man of reasonable caution in the belief'
that the action taken was appropriate. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct.
1868, 20 L.Ed.2d 889 (1968).

### A. <u>Unlawful Search and Seizure and Arrest</u>

Plaintiff's claims that he was unlawfully searched and arrested are
factually inaccurate and legally deficient. Officers do not require probable
cause in order to briefly detain an individual based upon safety concerns
during an investigation. Instead, police need only a "reasonable suspicion"
that an offense is being committed. *See Terry, supra*. This is something
significantly less than probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 124-
125 (2000).

Plaintiff's brief detention was reasonable. (According to Plaintiff it was
less than 10 minutes)**(Ex. 3, p. 75)**). The Court must evaluate the
reasonableness of a particular search or seizure in light of the particular
circumstances. *Terry*, 392 U.S. at 21. The objective standard is "[w]ould the
facts available to the officer at the moment of the seizure or the search
warrant a man of reasonable caution in the belief that the action taken was
appropriate?" *Id*.

Here, Plaintiff focuses his argument on the fact that Plaintiff ultimately
did not commit any crime. However, that is not the test of reasonable

8

suspicion. Officer Reyna summed up the facts known to him at the time

Plaintiff was searched:

> It would've been at that point that reasonable suspicion that
> conducted—that resulted in *Terry* pat-down based on the illegally
> parked vehicle, your client not giving us his identification when
> we were at that time going to present him a civil infraction
> because we believed it was his vehicle because he would not
> answer our questions on whether or not it was or was not his
> vehicle. So it was simple as just IDing him at that point so we
> could write him a civil infraction.

**(Ex. 2, pp. 24-25)**. Officer Hathorn also testified that after Plaintiff refused to

cooperate and follow the officers' commands that "an individual can be

detained during an investigation if there is a safety concern." **(Ex. 8, pp. 9,**

**19)**; *See U.S. v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007)(finding that nervous

behavior and the officer's experience justified handcuffing a suspect as a

safety precaution even when merely detaining, but not arresting).

Plaintiff also initiated the contact with Defendants. He left the public

sidewalk, and came into a secured area where police officers enter with their

personal vehicles and punch a keypad for access to City property. **(Ex. 1)(Ex.**

**5)(Ex. 6)(Ex. 7)** He then refused to answer any questions, his demeanor

became questionable and the Chief of Police determined that he was acting

suspicious. **(Ex. 6)** Specifically, the Chief explained that Plaintiff was acting in

a suspicious manner when he refused to identify himself. **(Ex. 6)** Plaintiff

admits that he incited the heightened sense of awareness of both Chief Settles and Officer Reyna when he refused to answer any questions on the basis of "I don't answer. Alright? I don't answer questions." **(Ex. 3, p. 72-73)**. Defendants were therefore justified in briefly detaining Plaintiff until the matter of the illegally parked car was resolved. During the course of the investigation, Plaintiff refused to provide his name, refused to state whether the subject car was his and then became agitated and attempted to leave the scene while the officers were speaking with him, thereby hindering the investigation and posing a safety problem as acknowledged by Officer Hathorn. The questions asked of Plaintiff were appropriate under the law. *See Sutton v. Metro. Gov't of Nashville & Davidson County*, 700 F.3d 865, 874 (6th Cir. 2012)(stating that during a *Terry* investigation, the officer can ask a moderate number of questions to ascertain the detainee's identity and to confirm or dispel that officer's initial suspicions).

Plaintiff's claims for unlawful search and seizure, and arrest, also fail under the theory of probable cause. In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. *Everson, supra*, 556 F.3d at 498. A police officer has probable cause only when he discovers reasonable, reliable information that the suspect has committed a crime. *Id.* Here, Plaintiff jumps to the end of this incident, mainly

10

that Plaintiff was ultimately innocent of any crime; however, a determination on probable cause is based on an examination of the totality of the circumstances. *Id.* The Court must consider only the information possessed by the arresting officer at the time of the arrest. *Id.*

Here, Defendants maintain that Plaintiff was only detained and not arrested. As Officer Hathorn explained, Plaintiff was not booked or taken into the station. **(Ex. 8, pp. 36-38)** However, even if his detainment constitutes an "arrest," Officer Reyna provided that before he even interacted with Plaintiff that he had come to the conclusion, at the time, that the illegally parked car on the street was Plaintiff's and that he was allowed to obtain Plaintiff's identity and provide a citation; thus constituting probable cause. **(Ex. 2, pp. 14-15, 24-25)** The fact that the Officer was ultimately wrong is not dispositive. An arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent. *Id.* at 499. Briefly detaining Plaintiff in order to determine if he had illegally parked his vehicle was not a violation of Plaintiff's Fourth Amendment rights. *But see, Kaupp v. Texas*, 538 U.S. 626, 123 S. Ct. 1843, 155 L.Ed.2d 814 (2003)(finding a violation of the Fourth Amendment wherein a

11

suspect was awakened in his bedroom at home, handcuffed and taken in for questioning in his underwear).

A mistake in effectuating the law does not nullify qualified immunity. *Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008). In *Dorsey*, plaintiffs were two suspects that were detained and arrested on suspicion of auto theft. The officer, at the time they were stopped, made them lie face down on the ground at gunpoint, they were handcuffed and were transported to a police station. *Id*. at 391. The plaintiffs, as noted by the Court, were "totally and unquestionably innocent of the charges under investigation." *Id*. The plaintiffs brought action for unreasonable seizure, arrest, and excessive force. *Id*. In determining the officer was entitled to qualified immunity, the Court stated:

> Viewing the situation with hindsight, it is clear that plaintiffs were innocent of any wrongdoing and that none of the coercive measures were actually necessary. Yet, it is not for us to judge the reasonableness of a particular use of force with the benefit of 20/20 hindsight. Rather, we are to judge it from the perspective of a reasonable officer on the scene.

*Id*. at 399.

As stated in *Dorsey*, the fact that Officer Reyna's reasoning for detaining Plaintiff turned out to be wrong does not preclude a defense of qualified immunity. Other relevant factors include the length of the detention, the manner in which it is conducted, and the degree of force used in determining

12

whether an investigative stop is reasonably related to the basis for the original intrusion. *Id*. Here, we know Plaintiff was detained for less than 10 minutes, in a squad car and that he was handcuffed for safety reasons. **(Ex. 3, p. 75)(Ex. 8, p. 19)**

Based on the foregoing, Defendants had reasonable suspicion to conduct a search and brief detainment of Plaintiff because he refused to answer their lawful questions or obey their lawful orders. Plaintiff has failed to establish a violation of his constitutional rights, and Defendants are entitled to qualified immunity. *See also*, *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)(stating that even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity); *Odom v. Wayne County*, 482 Mich 459 (2008)(holding that a governmental employee is entitled to immunity unless the governmental employee acts maliciously or with a wanton or reckless disregard of the rights of another); *Risbridger v. Connelly*, 275 F.3d 565 (6th Cir. 2002)(holding a police officer was entitled to governmental immunity against Fourth Amendment violation for arrest based on a refusal to provide identification).

### B.   <u>Malicious Prosecution</u>

Plaintiff's claim of malicious prosecution claim fails as there was no violation of his Fourth Amendment rights and no extended seizure. To

succeed on a malicious-prosecution claim under § 1983 a plaintiff must prove: (1) defendant(s) made, influenced, or participated in the decision to prosecute, (2) there was a lack of probable cause for the criminal prosecution, (3) the plaintiff suffered a deprivation of liberty, <u>apart from the initial seizure</u>, and (4) the criminal proceeding must have been resolved in the plaintiff's favor. *See Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010).

Here, Plaintiff's claim fails as a matter of law. Plaintiff was issued a citation that was ultimately dismissed; however, that does not negate the reasonable suspicion Officer Reyna articulated for the *Terry* pat-down, nor the probable cause stated for Plaintiff's brief detention (safety and refusal to provide identification) while Defendants obtained his identity and determined if the illegally parked car was his. Plaintiff also fails to allege a deprivation of liberty apart from the less than 10-minute detention while the citation was prepared. While Plaintiff maintains that the video shows that the Defendants stopped and charged Plaintiff with a crime was due to his video activity, the video clearly shows Officer Reyna asking and commenting on whether Plaintiff had a car in the vicinity, which Plaintiff admits to purposely refusing to answer. It was also not erroneous to charge Plaintiff with loitering when he admits he left the public sidewalk to video Romulus employees entering the City parking lot, blocking ingress to the parking lot, and refusing to answer

14

reasonable investigatory questions, which unnecessarily brought about the entire incident.

Thus, Plaintiff has failed to articulate a cognizable claim for malicious prosecution and is not entitled to summary judgment.

### C.    Failure to Intervene

Plaintiff claims failure to intervene against the individual Defendants on scene. A plaintiff must demonstrate that the officers (1) observed or had reason to know that [the constitutional harm] would be or was being used, and (2) had both the opportunity and the means to prevent the harm from occurring." *Hollaran v. Duncan*, 92 F.Supp.3d 774 (6th Cir. 2015); citing *Sheffey v. City of Covington*, 564 Fed.Appx. 783, 793 (6th Cir. 2014).

Here, each individual officer provided their own account for what occurred at the time of the incident. Each officer offered an explanation for what they witnessed at the time they came on the scene, which belies any notion that constitutional harms were occurring or that they came to the conclusion that constitutional harms were occurring.

- After Chief Settles and Officer Reyna had already established both reasonable suspicion and probable cause to detain Plaintiff, Officer Hathorn came to the scene. Officer Hathorn came to his own conclusion that Plaintiff needed to be detained for safety reasons and that was appropriate while he wrote the citation. **(Ex. 8, pp. 9, 19)**

- Defendant Orme, the driver of Hathorn's arriving squad car only sat in the squad car. "The male was placed in the rear of my patrol car until a citation was prepared for him by Ofc. Hathorn." **(Ex. 7, p. 6)**

- Defendant Harkins was not involved, physically, with Plaintiff and had no opportunity to stop any alleged constitutional violation. Defendant Harkins ran the license plate of the illegally parked vehicle, took possession of Plaintiff's camera and attempted to return said camera the same day as the subject incident. **(Ex. 5, pp. 7-8)**

The 6th Circuit Court has recently denied liability against a police officer that assisted with an arrest that others had investigated. *See Seales v. City of Detroit,* --F.3d--, 2020 WL 246307, No. 19-1555 (6th Cir. 2020). "[S]imply alleging that an actor could have done more is insufficient under Michigan law, because with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id.* at *6; citing *Wood v. City of Detroit*, 323 Mich App 416, 917 N.W.2d 709, 714 (2018).

The Defendants here never came to the conclusion *at the time* that any of Plaintiff's rights were being violated. Defendants' hindsight testimony that Plaintiff had not committed a crime on the video, does not create a duty for Defendants to have interfered at the time of the incident. *See Seales, supra.* As related to Defendants Orme and Harkins, mere presence is not enough to subject them to liability. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

**2.**   **Defendants did not Violate Plaintiff's First Amendment Rights**

**A.**   **Retaliatory Arrest**

Plaintiff claims that he was arrested in retaliation for exercising his First Amendment rights. Videotaping of the police was first recognized as a First Amendment right in *Crawford v. Geiger*, 996 F.Supp.2d 603 (N.D. Ohio 2014). In order then, to establish a retaliatory arrest, Plaintiff must show: (1) the plaintiff engaged in protected conduct, (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *See Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011).

Plaintiff was initially engaged in protected activity; however, once he left the public walkway and entered, while recording, a locked area of ingress into a police station parking lot it was reasonable that he might be asked what he is doing. Chief Settles' statement is as it appears on the video, that he asked if he could help Plaintiff, asked what Plaintiff was doing, and asked him if the illegally parked car was his. **(Ex. 1)(Ex. 6)** Chief Settles went on to explain that once Plaintiff refused to answer any questions, that he considered Plaintiff's actions suspicious and consistent with one that was "up to no good." **(Ex. 6)**

17

However, even if Chief Settles' statements were disbelieved, Officer Reyna's independent statements and reasoning for initiating contact with Plaintiff establish reasonable suspicion and probable cause (i.e. the illegally parked car). Further, Plaintiff was not arrested. **(Ex. 8, pp. 36-38)** Plaintiff was briefly detained for safety reasons while Office Hathorn prepared the citation that was issued to him. **(Ex. 8, pp. 19, 38)**

Based on all of the intervening actions and individual assessments that were made by the Defendants, there is a question of fact whether Plaintiff has established a claim for retaliatory arrest. *See Nieves v. Bartlet*, 139 S. Ct. 1715, 204 L.Ed.2d 1 (2019)(holding where there is probable cause to arrest, a plaintiff's retaliatory arrest claim fails as a matter of law).

### 3. Plaintiff's Claim of Violation of 42 U.S.C. § 1983 Fails as a Matter of Law where there was no Active Unconstitutional Behavior

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Everson, supra*, 556 F.3d at 494. There are four methods of showing that a municipality had a policy or custom necessary for § 1983 liability: (1) existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the

existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Here, Plaintiff's allegations of liability fall squarely on the premise that former Chief Settles' actions were unconstitutional. As addressed above, Chief Settles did not violate Plaintiff's Fourth Amendment or First Amendment rights when he approached Plaintiff and began by asking him if he could help him and then asked if that was his car illegally parked across the street. Instead of simply answering the questions, Plaintiff admits he refused to respond, meaning that Plaintiff took no action to even defend himself from the investigation. In contrast, both Defendant Settles and Officer Reyna present sound reasonable suspicion for the pat-down Plaintiff was subjected to (safety considerations) and the brief detention (illegally parked car)**(Ex. 6)(Ex. 7)**. As such, Chief Settles did not violate Plaintiff's constitutional rights and at a minimum, there is a question of fact if 42 U.S.C. § 1983 was violated.

### 4. **Plaintiff's Claim of Municipal Liability does not Identify a Prohibited Policy or Establish a Failure to Supervise or Train**

A claim pursuant to 42 U.S.C. § 1983 does not permit a municipal entity to incur liability under a theory of respondeat superior solely because it employs a tortfeasor. *Monell v. Department of Social Services of the City of New*

*York*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Rather, a municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question. *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). In other words, "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

A § 1983 plaintiff suing a government defendant must allege and prove the existence of a policy or custom of violating individuals' rights. *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir. 1988). Plaintiff's claim here does not allege a violation of an existing policy, but rather, a failure to train. To establish that a municipality failed to properly train and supervise an employee, plaintiff must show that the alleged failure evidences a "deliberate indifference" to the rights of its inhabitants. *City of Canton v. Harris*, 489 U.S. 378, 388-389, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989); *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). "Deliberate indifference" means evidence showing an obvious indifference, not a collection of sloppy, or even reckless oversights." *Doe v. Claiborne Co.*, *Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

Plaintiff's claims of failure to train cannot be sustained where the City of Romulus has provided training to all of its officers. **(Ex. 10)** Notably, Chief

20

Settles' training is extensive as reflected in his discovery responses. **(Ex. 10)**

Further, it is clear based on Officer Reyna's conduct at the time, and in his

deposition testimony, that Officer Reyna acted in accordance with the law.

Officer Reyna explained:

> Everything—our job is based on what we have in front of us and
> then we make a decision based on those facts. Okay. I can't just
> specifically tell you what crime. It's not—I don't have to prove
> that there was a crime. I have to have reasonable suspicion, not
> say that there was a crime. I have to have reasonable suspicion to
> be able to conduct a *Terry*-Pat down. So it's not as simple as saying
> what crime was committed.

**(Ex. 2, p. 13-14)** Even Plaintiff's counsel acknowledged that Officer Reyna

knew the law. **(Ex. 2, p. 14)** Officer Reyna's independent judgment was not a

result of illegal supervision by Defendant Settles. *See Estate of Carter v. City of

Detroit*, 408 F.3d 305 (6th Cir. 2005)(stating that supervisor liability attaches

when a supervisor encourages or condones a constitutional violation).

There is no showing in this case, for purposes of a dispositive motion,

that any of the Defendants' actions were taken with deliberate indifference of

Plaintiff's rights.

## II.  <u>DEFENDANT SETTLES HAS NOT FAILED TO PRESENT FOR DEPOSITION AS SANCTIONABLE UNDER THE COURT RULES</u>

Defendant Settles is gravely ill and recently underwent heart transplant

surgery. As such, he has continued to be unavailable for deposition. **(Ex. 12,**

**Henry Ford Hospital Letter)** Defendant Settles has not engaged in sanctionable conduct as contemplated by Fed. R. Civ. P. 37. Plaintiff improperly seeks to win the case, establish respondeat superior, and withhold pertinent information from a potential jury based on the illness of a central witness to this case. Such an outcome would be unreasonably harsh in light of Defendant Settles' grave illness. *See Little Hocking Water Ass'n., Inc. v. E.I. Du Pont De Nemours & Co.*, 94 F. Supp.3d 893 (2015); *Samaan v. St. Joseph Hosp.*, 274 F.R.D. 41 (D. Me. 2011)(stating that where witness preclusion as discovery sanction will carry the force of dismissal, the justification for it must be comparatively robust).

Defendants have briefed this issue in depth in a separate motion before this Court. **(ECF No. 21)** Plaintiff has cited no authority to take advantage of the misfortune of a key witness. At a minimum, Chief Settles' statements, report and discovery responses create a question of fact in this case, and Plaintiff's Motion for Summary Judgment should be denied.

## CONCLUSION

There is a question of fact if the officers in this case are entitled to qualified immunity. The subject video itself creates a question of fact as to Plaintiff's contact with Defendants. Plaintiff cannot initiate contact, refuse to provide any information in defense of himself but then simultaneously claim

that he is entitled to constitutional protection for a self-created situation. Even after the incident, Plaintiff left and came back to the Romulus police station lobby to make further recordings. Plaintiff was clearly not injured, and continued his provocative behavior…on purpose. Lastly, probable cause is a jury question that Plaintiff has not established for purposes of this motion.

**WHEREFORE**, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

PLUNKETT COONEY

By: _/s/ Audrey J. Forbush_
AUDREY J. FORBUSH (P41744)
Attorney for Defendants
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI 48502 (810) 342-7014
aforbush@plunkettcooney.com

Dated: June 9, 2020

## **PROOF OF SERVICE**

KATHALEEN M. FORDE hereby certifies that on the 10th day of June, 2020, she caused to be served a copy of DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and PROOF OF SERVICE via CM/ECF electronic filing with the United States District Court for the Eastern District of Michigan, Southern Division, which will provide electronic notice of this filing to counsel of record.

*/s/Deborah K. Vacca*
Deborah K. Vacca

Open.00560.91387.24318213-1